No. 37,790

Louis S. Kehias, *Appellee*, v. G. B. Govits & Company, Inc., a Corporation, *Appellant*.

(215 P. 2d 215)

Opinion filed February 28, 1950.

*John E. Boyer*, of Wichita, argued the cause, and *George J. Hondros, Paul J. Donaldson*, and *Harold T. Beck*, all of Wichita, were with him on the briefs for the appellant.

*A. D. Weiskirch*, of Wichita, argued the cause, and *Manford Holly* and *William C. Farmer*, both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: This was a suit by a minority stockholder of a corporation, engaged in the business of selling refrigerators, etc., at retail, for the appointment of a receiver and the closing of the affairs of the corporation.

In the verified petition, filed February 2, 1948, it was alleged that the defendant corporation was organized and began business July 1, 1945, with a capital of $25,000 divided into 250 shares, with G. B. Govits owning 127 shares, as president; Louis S. Kehias, owner of 120 shares, as vice-president and treasurer, and Beatrice Govits, wife of G. B. Govits, owning one share as secretary, and with two shares owned by two other parties; that at the time of the filing of the petition the corporation was transacting business as a closed family corporation, to the detriment of plaintiff, and had committed certain acts of fraud and mismanagement, which were detailed, and had caused dissension and irreconcilable conflict between the principal stockholders, and made the continued existence of the defendant corporation hazardous, for reasons that were stated. The al-

leged acts of fraud or misconduct were set out, but need not be detailed here. It was alleged that because of the acts and conduct complained of the corporation was in imminent danger of insolvency, was subjected to forfeiture of its corporate rights and its officers were subjected to possible criminal prosecution. The prayer was for the appointment of a receiver and an accounting by a certified public accountant, an order that all property wrongfully appropriated or withheld from the corporation be returned, that its debts be paid, and the remaining assets distributed.

On the day the petition was filed plaintiff also filed an unverified motion for a restraining order. Without a hearing or notice to the defendant the court entered the following:

"RESTRAINING ORDER

"STATE OF KANSAS
To
G. B. Govits and Beatrice Govits
President and Secretary, respectively,
of G. B. Govits & Company, Inc.,
a corporation, and G. B. Govits & Company,
Inc., a corporation.

"Upon application of the plaintiff and his verified Petition herein filed, you and each of you are hereby temporarily restrained and enjoined from the further transaction of any business connected with G. B. Govits and Company, Inc., a corporation defendant herein, and you are further temporarily restrained and enjoined from selling, giving away or otherwise disposing of any of the property or assets of said corporation and from receiving, obtaining and in any manner disposing of moneys, properties or other assets now due and owing unto said G. B. Govits and Company, Inc., a corporation, or in any way incurring any indebtedness for which such corporate entity would hereafter be responsible or liable, until such time as a hearing may be had upon plaintiff's petition for the appointment of receiver, or in the alternative, until the further order of this Court."

Two days later defendant filed a motion to dissolve the restraining order, which reads:

"COMES NOW the defendant and respectfully moves the court to dissolve a restraining order heretofore issued by the court on February 2, 1948, which restraining order in effect restrains the defendant corporation from engaging in any type of business to the serious detriment of the financial interest of the corporation and its stockholders and further that said restraining order was secured without any notice of any kind to the defendant, nor did the plaintiff herein post bond to secure the defendant corporation against damages that would naturally flow from the Restraining Order procured by the plaintiff; that the Restraining Order herein referred to was not issued in accordance with the statutes of the State of Kansas and is, therefore, unlawful and should be forthwith by the Court dissolved."

We are told there were some hearings on this motion to dissolve and that at some time it was overruled, but no record of the court pertaining to that matter is shown by the abstract. It should be noted that the restraining order stopped the business of the defendant corporation. It could not sell any of its merchandise, collect any bills due it, nor pay any bills it owed. The lease on the building where the business was conducted was forfeited for nonpayment of rent and G. B. Govits rented the building in his own name and paid the rent, and since he could not conduct the business of the corporation he moved its merchandise to one side of the room and bought merchandise of his own, which he endeavored to sell in the other part of the room.

At some date, not shown by the record, the plaintiff filed an accusation for contempt against G. B. Govits for having disobeyed the restraining order in selling a few items belonging to the corporation. There was a hearing upon that citation on April 15 and 16, 1948, and then continued to May 3. At that time the court thought an auditor should be appointed and it appointed a firm of certified public accountants in Wichita to conduct an audit and make a report to the court by May 14, 1948. This audit was made and a report filed. The next thing the record shows to have been done in the case was on January 7, 1949, when the court wrote counsel as follows:

"The Court has been a long time in reaching a decision in this matter, not because it is so involved, but because the court has been busy with matters that came up before this one but as to this matter the court finds the defendant guilty of violation of the restraining order as charged.

"Prepare journal entry accordingly."

And on that date it appears the court ordered G. B. Govits to appear in court on January 14, 1949, at 10:00 o'clock, to there receive such punishment for said contempt that to the court seemed just and proper. There is no record of what, if anything, was done on that date.

Since G. B. Govits had been enjoined from paying any of the obligations of the corporation he was unable to pay the taxes on its personal property. A tax warrant was issued for the amount and the sheriff levied upon the property and conducted a sale of it. At the sale G. B. Govits bought enough of the property to satisfy the tax warrant and appears to have moved the property into his part of the room where he was conducting business. The defendant filed an answer in which it admitted the organization of the corporation, the number of shares held by the incorporators

and their official positions, and denied specifically and generally all the allegations of plaintiff's petition upon which plaintiff sought a receivership and the dissolution of the corporation.

The case was set for trial on June 6, 1949. Apparently the first thing that was done, counsel for plaintiff called G. B. Govits as a witness and interrogated him about having purchased some property at the sheriff's sale for the collection of taxes. Counsel for plaintiff then stated:

"Now, if your Honor please, upon this testimony before we start into this trial, I think the court should order him to restore the property he bought at that tax sale which he bid in as president of his own corporation. . . ."

After some colloquy between counsel and the court, the court said:

"Before we go onto something else, I am ordering that that office furniture and whatever it was sold for taxes be restored and, of course, he paid the taxes for the company and he will have his claim for the amount of taxes he paid at the Sheriff's sale, and the thing has proceeded so long apparently the parties interested do not have a complete understanding of what their duties are, but I will assess a penalty of $25.00 for disobeying the court's order."

Counsel for plaintiff made an opening statement, near the close of which he said:

"Now, what we are here for today, your honor, is to have a Receiver appointed to take over this thing and sell it and dissolve the corporation. . . ."

The Court: "Well, I think that is what ought to be done if you can agree on a receiver. Whom do you want?"

Counsel for defendant: "We can't agree on a Receiver, we object to the appointment of a receiver, the Court will remember you ordered a certified public accountant company to make an audit . . . and they have made a complete audit and reported to the court and it shows no grounds whatsoever for a Receivership, it shows no irregularities of any kind, it shows the company has always operated at a profit, it shows in compensation to officers as members of the organization in 1945, 1946 and 1947 and in 4 years he drew $8,704.39 and Kehias drew nothing in 1945 but in 1946 and 1947 and part of 1948 he drew $5,500 and Mr. Weiskirch refers to it as a family affair, Mrs. Govits in four years drew a total of $1,300 in salary it shows this —in 1945, $285, in 1946, $750, in 1947, $125, just working extra as a bookkeeper, and he said the son worked there, in 1945 for services during the summer, $144, 1946, $150, not a dime in 1947, not a dime in 1948, for a total of $294.00, he says it is run for the benefit of the Govits, which is not true, according to the audit but it shows a well run, well managed corporation making a profit under the guidance of the President, a man who has been in this business for 24 years and there is not a single ground as to why this corporation should not be able to and permitted to run as a corporation under the control of the board of directors and if so permitted will go ahead

and make money as it always has in times past and the audit shows a profit every year."

Counsel for plaintiff: "The Audit does not correspond with the profit and loss statement submitted during those years and all those things and I don't like to take up the time, ——"

The Court: "No, I can't go into it, I don't have time. Look at the people here now waiting for you to get through. I don't have the time to criticise these reports or comparisons of that kind, they are all strangers to me, which one to believe and what one not to believe. But, it is apparent from what I have heard here in open Court it is apparent it has gone along without any consideration for other official duties and this tax sale purchase by the President of the corporate property is one of the items of a number of others I remember a number of things but not in detail, but this organization has not been conducted entirely in good faith on the part of those who are conducting it. So, I think the only thing to do is to put it ino the hands of a Receiver and let him handle it. The Court cannot be a Court and at the same time manager of and operating a business. Now, whom will you have for a Receiver?"

Counsel for plaintiff suggested the name of Frank Baker. Counsel for defendant was asked to make a suggestion. He had none to suggest, but offered the auditor's report, which was received in evidence, and repeatedly objected to the appointment of a receiver. The court appointed Frank Baker as receiver and fixed his bond at $1,000. Defendant's motion for a new trial was overruled and this appeal followed.

The record in the trial court was not well kept. If any journal entry was made of what was done in court, except of the order allowing the retraining order and of overruling the motion for a new trial, it is not shown by the abstract. The case appears to have been abstracted from the transcript of the reporter's notes.

Appellant contends that it was error for the court to grant the restraining order without a notice and hearing. The point is well taken. To stop the work of the corporation, tie its hands so it could not sell any of its merchandise, collect any bills due it, or pay any bills it owed, is as legally unsound as it is unjust. Appellant further contends that when issues were made up and the case was set for trial, to appoint a receiver without a trial of the contested issues was erroneous. We agree with that contention.

The result is that the judgment of the trial court granting the restraining order is reversed and the restraining order is set aside, and that the judgment of the court made on June 6 appointing the receiver without hearing the evidence was erroneous and is reversed.

It is so ordered.